The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, please be seated. Judge Young, we are particularly happy to have you with us today. It's a pleasure to have you. Thank you, I'm glad to be here. All right, let's begin with the United States v. Gerald Johnson. Mr. Anzano. Good morning, Your Honors. May it please the Court. I'm Paul Anzano. I represent Gerald Johnson in this matter. And I'm arguing on behalf of Mr. Johnson and his co-appellants, Kenneth Jones and Marquise McCants. The centerpiece of the government's case against the appellants was its repeated assertion that the appellants had an ironclad rule that anyone who cooperated with law enforcement would be killed. And the jury was shown repeated evidence, which the district court characterized as gruesome, graphic, and shocking, of murders carried out against people allegedly because they cooperated with law enforcement. This evidence obviously affected the jury, which on multiple occasions sent a note to the district court saying that they were concerned and afraid of retaliation by the defendants. The appellants in each case asked the judge to ordeer the jurors to be sure they would remain impartial, but the district judge declined to do that, saying this is simply the reaction any reasonable person would have to this kind of evidence. He said, who wouldn't be fearing for their own safety in this case? On the fourth such occasion, one of the jurors came into the jury room, and one of the other jurors described this juror as, quote, unquote, freaked out. And he told the rest of the jurors that the defendant's family and friends were taking photographs of the jurors. The district court, as this court recognized, immediately recognized the seriousness of this allegation, because, as the district court said, why else would anyone be photographing jurors if they weren't trying to intimidate the jurors? The district court took the matter seriously, and as I understand it, juror number four was removed from the jury and didn't deliberate. And at least after the remand, the district court polled the jurors and took testimony from the jurors. And the point made by Judge Motz earlier in her dissent was that the district judge is in the best position to appreciate the dynamics of a jury deliberation and to know the seriousness of the violation and what exactly could be done by means of instruction. And it's a very able district judge, and I'm hard-pressed to see what the district judge did wrong. Well, Your Honor, you're correct. The district judge did dismiss juror number four. The district judge said this juror may well believe that something was going on in that regard. And if that's the case, that could affect or influence them in this case. But he didn't just dismiss juror number four. He polled the jury to see what kind of effect it would have. Well, this court has already found that that was error. The way the judge handled the voir dire of the jury in the trial was error, and this court remanded it for a remand hearing. And the court did conduct that remand hearing here, and the jurors testified. What this court said was the problem that led to the dismissal of juror number four could apply equally to any other jurors who had heard the statement from juror number four, even if they hadn't witnessed photo taking themselves. This court said other jurors had the same information as juror number four and reasonably could have reacted in the same way. So the district judge did conduct the remand hearing. And the problem was that this was a post-verdict remand hearing. And as this court has noted on numerous occasions. Let me ask you, what is the district court supposed to do? The district court trying to comply with our mandate and it took the testimony of the jurors and asked them what effect, if any, did it have? Whether it would violate their right to be impartial and satisfied itself that a fair trial was held. I don't understand what else the district court was supposed to do here. Well, the problem is not that the district court failed to do something it should have done. The problem is the district court did something it should not have done. And that is it violated rule 606B by asking the jurors whether they could remain impartial and keep an open mind after this event. Why was that error? Why was it error? Because rule 606B very clearly says that a juror after the verdict is not competent to testify about their mental processes concerning the verdict. Why was asking that question questioning their mental processes as it related to the verdict? Because what the district judge here tried to do was quote-unquote thread the needle by telling the jurors, don't tell me about what happened after deliberations began. Just tell me about what happened before deliberations began. The problem is, as the language of the rule itself recognizes, the jurors' mental processes concerning the verdict aren't limited to deliberations. Jurors hear evidence. They decide. But the district court was trying to follow the mandate and to find out what effect it had. What is it? I don't understand what the district court could do. It tried to follow the mandate of this court in the most bona fide way that it possibly could. And I understand why you don't want, but it's interesting why you don't want that testimony from the jurors. You don't want that testimony because the testimony almost uniformly points in the direction of, no, this didn't have an effect on our deliberations. It wasn't a central part of our deliberations. It didn't affect my ability to be impartial. And I don't blame you for not wanting that testimony to get into the record. But I don't. But it seems to me that the district court was just trying to do what exactly the prior opinion suggested. Your Honor, it's not a question of whether I want the testimony or my client wants the testimony. It's a question of whether the testimony is permissible under Rule 606B. And what I would submit is that it is not. Counsel, can I ask you, I mean, the judge asked the jurors a specific list of questions. It would be helpful for me. Which questions did the judge ask that you believe violated Rule 606? The questions that I believe violated Rule 606 were, I think there were numbers nine and ten. Were you able to remain impartial and were you able to keep an open mind? And that's because those questions were not prefaced by the words before deliberations began, comma? No, it's because the judge was not permitted to ask those questions by Rule 606B. So one thing I was having a very hard time, I agree with Judge Young that, you know, in the briefs, you sometimes shorthand the rule as saying they're mental processes, but the rule doesn't say they're mental processes. It says they're mental processes concerning the verdict. And I was not able to find the advisory committee notes do not really talk about this much at all. And I was not allowed to find a lot of cases saying what concerning the verdict means. What's your best authority for the proposition these questions were concerning the verdict? My best authority are two cases, one in the Supreme Court, and that's Tanner v. United States, and the other is in this court, and that's Fullwood v. Lee. If you look at Fullwood v. Lee, that's a case where after the verdict came in, one of the parties to the case brought in an affidavit from a verdict, it was a death penalty case, and brought in an affidavit from a juror saying that one of the other jurors told the rest of the jurors that her husband was constantly telling her, you need to convict this guy and give him the death penalty. And that was both before deliberations and after deliberations. Well, that's obviously concerning the verdict. That's saying someone said we should convict this guy because. I agree, that's clearly concerning the verdict, but that seems like a couple steps away from, were you able to remain impartial? Well, asking the jury if you remained impartial certainly concerns them. That's the sine qua non of a juror, they have to be impartial. But you said you wanted them to keep this out of their mind, correct? Correct. That's what you wanted the judge to ask. Yes. So can you tell me, because this is what I've been wrestling, what's the difference between remaining impartial, keeping this out of your mind, like you said, and keeping an open mind, like the judge said in all the transcripts I read? So what is the difference between those in the context of, I don't want to hear about your deliberations, but between the time that the photographs were taken, or this photographic incident, and closing argument, what's the difference between those three words? Well, the difference, and what's important to recognize is the argument that I made about with respect to the judge not asking them if they could keep it out of their mind, specifically is prefaced on the notion that this argument only comes into play if the court determines that 606B did permit this testimony. So it's an alternative argument, first of all. So they're not inconsistent for me to say that. What I'm saying is that if you're going to ask the jury could you remain impartial, there were two obligations. One is you had to tell the jury what impartial means. It doesn't just mean considering all the evidence or considering both sides. It means considering only the evidence in the case. And a juror could have thought perfectly reasonably that they were being totally impartial. They considered all the evidence against the defendants and all the evidence for the defendants, and in considering the evidence against the defendants, considered the photo incident. They could have considered that to be impartial. But no one told them. Excuse me. If you think there was an error here, and I do not believe so, it still is a question of the harmlessness of it. Because there was no external contact. The jury was excused. And the district court said this was an uncorroborated allegation. They couldn't even find any evidence to support the allegation. And then, in addition, the evidence here against the defendants was simply overwhelming. There's a mountain of evidence. And I'm wondering, given this, I mean, upending the result of a 10-week jury trial with more than 50 witnesses, 500 exhibitions, it would seem to me that the jury had quite a lot of evidence, quite a lot of evidence to rule the way that it did. What you're asking is for a reversal on the basis of an uncorroborated allegation with no external contact where the juror was excused, and you want us to overturn a 10-week jury trial with all of these different witnesses? You're going to have everybody come up again? Given the strength of the government's case, I don't get it. Your Honor, the fact that this court has already held that the fact that this was uncorroborated and the fact that it may not have been that no one actually did try to take pictures is irrelevant, because juror number four came in and told the jurors that that's what he saw. So that's beside the point, whether or not that happened. And as far as the tidal wave of evidence, I would point the court to Barnes v. Thomas, where the court said the inquiry is not the sufficiency of the evidence absent the error, but rather the impact of the error on the jury's verdict. It does not matter how much evidence there is. If the jury is impartial, the verdict is invalid. If the jury is not impartial, the verdict is invalid. But so, counsel, can I ask you, I see you as having two different claims of error that seem to be completely mushed together in the briefing. One is whether the jury was impartial. That's a due process question. One is whether the federal rules of evidence were complied with. That is a nonconstitutional rule-based violation. So assume I think that the district court maybe violated Rule 606, but that nothing it did violated the due process clause. The remedy, then, if any, is a new REMER hearing, not a new trial, right? Well, I don't think it is actually, Your Honor, because... On what basis would we overturn a 10-week jury trial in the guise that during the course of a post-verdict hearing, the district court violated the rules of evidence? Well, the error here was not simply that the judge violated the rules of evidence in the REMER hearing, but the district judge violated REMER during the trial by not holding the hearing done. And we sent it back for a new REMER. I mean, the reason, what got me thinking about this is that REMER 2 itself was before the federal rules of evidence. And it looks to me that in the hearing contemplated in REMER 2, there were questions that would violate Rule 606 if done post-verdict. And so, I mean, they're just different questions. One question is whether the due process clause was violated, whether the jury was impartial. And if the jury wasn't impartial, that's probably automatic reversible error. But if the only violation that happened is potentially a violation of the rules of evidence, I don't know why you would vacate the jury's verdict in that situation. Because under REMER, the Supreme Court has said that if there is an external influence like this, and I use the word external influence despite the fact that it was uncorroborated because of what this court has already held, but that is presumptively prejudicial. It is so damaging that it is presumptively prejudicial, and the government bears a heavy burden to show there is no reasonable possibility that a juror was effective. And the problem here is that the district court violated Rule 606B. Without that violation, the government cannot meet its verdict. I'm not arguing that the jury was, in fact, not impartial in this case. But let me – I only have a few seconds left, but let me leave you with this thought. The policy behind Rule 606B is to prevent harassment of jurors and to ensure finality of verdicts. Because we don't want jurors being hounded after trial. They come before and say, well, I didn't approach the deliberations right. That policy – the government's view in this case would completely eviscerate Rule 606B. Because what it would mean would be that a juror could come in and say, well, the day before the verdict, I did something. Thank you, Mr. Anzana. You have some rebuttal time as well. Yes, thank you, Your Honor. Thank you. Mr. Martinez, we'd be happy to hear from you when you're ready. Thank you, Your Honor. Good morning, and may it please the Court. Peter Martinez for the United States. The record shows that there was no external contact with the juror in this case. Can you speak up and put that microphone closer to you? I'm sorry, Your Honor. No, that's much better. Thank you. No one took, attempted, or threatened to take photographs of any jurors. Nor did any deliberating juror or alternate perceive that such a contact had taken place. The jurors did not, as the district court wrote, provide substance to shadows. All that happened was this. One juror who was dismissed misinterpreted an everyday encounter with a woman holding a phone in a hallway. That encounter cannot be the basis for awarding these appellants a new trial. However, the encounter is analyzed. Whether this court applies a subjective test, an objective test, or both, as the district court did, there is simply no world in which this disproven photographing allegation impacted the verdicts in this case. In terms of precedent, Your Honors, the alleged encounter here was wholly different in character than the contacts at issue in the three leading cases where this court ordered new trials following rumor hearings conducted by district courts. In two of those cases, Barnes and Stockton, the external contact happened during deliberations regarding the very matter the jury was considering, whether to impose the death penalty. In the third case, Cheek, the external contact was literally the abduction and attempted bribing of a juror. Here, by contrast, the allegation in this case is far more similar to the contact at issue in three other cases that have come before this court, United States v. Hines, Barahona, and Small. In all of those cases, jurors encountered people holding cell phones and speculated that those people may have been taking their pictures. In Barahona and Small, this court found that a rumor hearing wasn't even required. In Hines, the district court did conduct a rumor hearing, but it only questioned the juror who reported having seen an agent taking photographs, notwithstanding the fact that that juror discussed both the incident and the district court's instructions pertaining to the incident with his fellow jurors. In the opinion remanding this case, the majority pointed to Hines, and it said that the district court had failed to create the same kind of record here as to whether the jurors remained impartial. That's exactly what the district court did on remand. In fact, it did even better than the trial court did in Hines. Here, unlike in Hines, the district court dismissed the juror during a rapport who made the photographing allegation. Unlike in Hines, here the district court questioned each and every juror and alternate, as well as the court personnel who witnessed and investigated this incident. And so given all of that, your honors, there's an even clearer record that the incident here was non-prejudicial than there was in Hines. Well, Judge Hytens made the good point that we are dealing at most here with a violation of the federal rules of evidence. I don't see we're dealing with any kind of constitutional infraction. The question really front and center is an evidentiary question in Rule 606B. And when you get into evidentiary questions, what to admit, what to exclude, where you're talking about evidence, and particularly a judge's handling of a jury, you're talking about something in which district judges deserve a certain amount of latitude. There just isn't any other way for the federal rules of evidence to operate. And even if there is a 606B violation, which I don't think there is because of the care the district court took in formulating it, but the district court was just trying to follow our mandate when he did what he did by asking about the effect, create the record. And it's the kind of thing that district courts are in a best position to manage because the jury is not in front of us. We don't get to evaluate it. The district judge was the one that got to evaluate the dynamics of the trial and the responses of the jury. I think that's right, Your Honor. And with respect to this court's mandate, I just want to come back to the conclusion in the majority opinion, which was we reached the firm conclusion that the defendants were entitled to an evidentiary hearing under Remmer to determine whether all the jurors remained impartial throughout the case. Full stop. That was the instruction to the district court, and that's exactly what it did here. And it did so consistently with 606B. It told each and every juror who testified that it didn't want to hear about anything that happened, anything the jurors felt or thought after deliberations began. Well, I looked at the questions and I agree the district court had a very hard job trying to follow our mandate in a very delicate situation. The first, I think, like 10 questions are not prefaced by the admonition. I'm not asking about anything that happened after deliberations. So what about questions? I think it's nine and 10, the ones about impartiality, which are not prefaced by before deliberations start. What do we do with those? I think those questions were fair game, especially in light of the proviso that the district court gave the jurors. What proviso? That I don't want to hear about anything. No, no, no. I looked at the form that the district court recited to the jurors, and there were a couple of questions that were not introduced by the proviso before delivery. The court asked a bunch of questions. Then it says, for purposes of my next questions, I don't want to hear anything. So what do I do with the questions that are before that proviso? Well, importantly, Your Honor, I think the questions about impartiality and keeping an open mind were prefaced by that proviso. The remaining questions, the questions that came beforehand, I think, were highly unlikely to raise 606B issues. And therefore, the district judge didn't feel the need to give that proviso before he asked the question. Can I ask you the question I asked your colleague on the other side? What is the best authority you're aware of of what the words concerning the verdict mean? Well, I think you start with the plain meaning of the rule. Concerning is not exactly the most totally unambiguous word in the history of the world. Sure, Your Honor. I mean, I think one common sense way to interpret the plain meaning of the rule is to think about what juries are instructed as a trial is taking place. Throughout this very trial, the district judge repeatedly admonished the jury to keep an open mind, not to discuss the case with each other, and not to begin deliberating upon a verdict until after all the evidence was in. The judge had instructed the jury, and the lawyers had made their closing arguments. Those instructions and the way trials are ordinarily conducted, Your Honor, I think is my best authority as to what concerning the verdict means. It's a common sense proposition. We can also look at cases like Hines, Your Honor, where during a post-verdict REMER hearing, the affected juror was asked, did this affect your ability to remain impartial? He testified that it did not. And this court considered that in finding that there was no prejudicial impact of the photograph. Did we consider whether that violated Rule 606? No, not squarely. And that's the challenge I have. I mean, I agree with you. There are cases where we recite evidence that appear to be barred by the defendant's test. You say that about Cheek. You say that about Barnes. You say that about, actually, heck, REMER 2. There are questions in REMER 2 that seem to violate the defendant's test in this case. But I'm not also sure that in any of those cases the court actually specifically confronted whether that— I mean, in REMER 2, the federal rules of evidence hadn't been enacted yet. But in those other cases, like Cheek, I didn't see us wrestling with whether that testimony complied with Rule 606. I think that's a fair point, Your Honor. To the extent you do wrestle with Rule 606B in this case, I want to pick up on something counsel said in his argument. And that is the purpose behind 606B. Counsel is absolutely correct that the purpose behind the rule is to prevent the impeachment of verdicts and to prevent jurors from being called in after the fact and harassed with questions about things that took place inside the jury room. I would submit that once REMER has been triggered and the presumption applies and a district court is in the posture of having to get to the bottom of whether an external contact was prejudicial, the interpretation of Rule 606B that is most consistent with its purpose, which is to ensure the integrity of juries, is to give the district judge the latitude to ask questions that get to the bottom of whether the external contact prejudiced the jury. And 606B envisions that when it carves out. Many of these cases did not involve the circumstance that we have here, which is a district court operating under a mandate from the Court of Appeals. And so the district court was operating under a mandate. And many of these other cases did not find the district court operating under a mandate. So you've got the district court is pinched in that one thing and it has to follow the mandate of the court. And the district court says, I'm going to strike a balance. I'm going to ask in accordance with the mandate what the effect of the allegation has upon them personally. But I'm not going to get into the impact on their deliberations or the course deliberations took. And so you have a district court trying to dutifully to strike a balance, working under a mandate, trying to satisfy the mandate at the same time, trying not to violate 606B. So I don't know what, given the confluence of all the circumstances here, I don't know what the district court was supposed to do other than what it did. I kept saying, well, how would I handle this? Well, given the mandate, I would have tried to strike the balance. The district court did comply with the mandate, not violate 606B. And, you know, he navigated all these conflicting currents pretty skillfully. I completely agree, Your Honor. I think this the handling of this hearing was the wise exercise of discretion. And I would add that the district court not asked the jurors whether they could remain impartial and whether they kept an open mind. And that would undoubtedly be an issue today, just as it was when we argued the case before a different panel three years ago. That was the key thing that the panel focused on in sending this back, that the district court didn't ask the jurors whether it could remain impartial. And that was front and center in the opinion that remained in this case. What if we determined that the judge did violate 606B? Then what? I'm glad Your Honor asked the question. I was thinking about it when Judge Heitens asked the same question of opposing counsel. I would submit that the remedy isn't even a new Remmer hearing. I think the remedy. I think at most it would be a new Remmer hearing. Correct, Your Honor. I think the remedy is just to not consider the inadmissible testimony if the court finds that 606B was violated. If those questions violated the rule, you're still left with the objective analysis under the Basham factors, all of which tilt in our favor. You have the fact that the jurors hardly discussed this incident on the day it occurred. I think you can find from the record that district court found that their discussion of this incident lasted a couple of minutes at most. And that importantly, after the district court instructed the jury the following day that the matter had been investigated and no photographs had been taken, the jury didn't talk about it again after that. You also have the fact that this was a fleeting encounter. It didn't provide the jury with any extra record information about any relevant substantive issue in the case. You have the timing of it. It happened two weeks before deliberations. It was followed by two different curative instructions, the instruction the following day that no photographs had been taken, and then another instruction after closing arguments in which the jurors were told not to consider anything they may have heard or seen outside the courtroom, and to consider only the facts and evidence. You also have, and Basham expressly directs courts to consider this factor, the weight of the evidence, which was simply overwhelming in this case. A parade of cooperators put these defendants in the Black gorilla family. Multiple witnesses testified that Appellants Johnson and Jones committed murders and shootings. Appellant McCance himself admitted to committing murders and shootings, and all of that evidence was corroborated by forensic evidence, cell phone evidence, social media postings, the defendant's own statements while testifying in their defense. Simply put, Your Honors, this was not a close case. So even if the court finds that Rule 606B was violated, it can still consider all of those objective factors, which have nothing to do with the jurors' subjective responses about whether they could remain impartial. And what about your friend on the other side, in terms of objective factors? I mean, there's sort of the, I mean, I realize they don't raise any claims of error about it that are specific, but the entire atmosphere of this jury might, in particular, that any reasonable juror sitting on this jury might be, shall we say, more jumpy than the average juror about the possibility that someone might be trying to influence them, given the nature of this case. What would we do with that? I think that's a dangerous proposition, Your Honor. That position is essentially that these defendants were so prolifically violent that a juror couldn't pass a woman holding a phone without becoming constitutionally tainted. I think to the extent that the jurors reacted to the valid and admissible evidence that these defendants were guilty, that presents no issue under remedy. The strength of the government's case, the graphic and gripping nature of the evidence, so long as it was lawfully admitted, that cuts only one way, and that's against defining prejudice. As the district court put it, the appellants can't bootstrap valid evidence of their guilt into invalid prejudice. I think that's clear under the law. I want to make sure to emphasize to the court the systemic interests that are at stake here. Three years ago, in the small case that I referenced earlier, Judge Wilkinson wrote that it's difficult to fully shield juries from the outside world. And long before that, in Smith v. Phillips, the Supreme Court held that due process doesn't require a new trial every time a juror is placed in a potentially compromising situation. If the court reverses here and orders a new trial, it'll effectively be telling district judges that juries must be shielded from the outside world in a way that's neither reasonable nor practical, and that even de minimis disproven allegations can derail a criminal trial. That'll make it harder to hold public jury trials in criminal cases. It'll give defendants the power, as Judge Motz noted in her dissent in the opinion remanding this case, to demand new trials for what we ordinarily would consider innocuous conduct. That's not theoretical, Your Honors. If the court reverses here, future defendants in Baltimore and elsewhere will instantly realize that if a trial isn't going their way, they can get a mistrial, a hearing, a new trial, simply by enlisting associates and fellow gang members to stand in hallways and to display cell phones. We'd ask the court to avoid that here and to find, as the district court did, that there was no constitutional violation. If there are no further questions, I'll see if we can make a motion. If either of my colleagues have any further questions, certainly welcome. Thank you very much, Mr. Martinez. And, Mr. Inza, you have some rebuttal time. Thank you, Your Honor. Let me begin where Mr. Martinez left off. He said if the government reverses here, defendants will know that they can, what he said in his brief, hold the proverbial fire alarm by enlisting their colleagues to go and take pictures of the jury or pretend to take pictures of the jury. Now, of course, the response to that is if that happens during the trial, the court can and should, as the district court should have here, hold the remedy hearing during the trial, which is when the court can ask the jurors, are you able to remain impartial? Now, consider the flip side, though. Suppose that in this case we're here in a different posture. Suppose that instead of the juror coming in and saying and telling the other jurors that this happened, suppose he didn't say anything to the rest of the jurors, but suppose that after the case, the defendants, after they were convicted, came in with an affidavit from that juror, and he said, on that particular day, I saw somebody who I thought was taking pictures, and it freaked me out and made me so concerned. That was all I could think about, and I'm not talking about my deliberations here, but during the time that all that evidence was being put on, all I could think about was how dangerous these defendants were and the threat it posed to me. If the court allows what happened here to go forward, then there's no way to distinguish the scenario I just put. But your hypothetical is not our case. No, it's not, Your Honor. Not our case. But the rule that's established in this case is going to apply in future cases, and the question is, as Mr. Martinez says, this case is going to send a message to future defendants, and what's that message going to be? And if the message is, hey, you can't bring a juror affidavit in to say I did something. I don't see that there's any broad rule that this case is presenting. It's presented with a particular set of facts into which the district court inquired and found that it didn't have an effect on the fairness of the trial. But that's not a broad rule of any kind. This is a case-by-case inquiry, and that's what we have a trial court for, to examine all the circumstances and what it can and can't do under 606B and ask whether there was an unfair trial. But I don't see this as generating any kind of broad rule. I see it as a very fact-specific case. Of course it generates a broad rule, Your Honor. The rule is that the language in Rule 606B that says the juror cannot testify about his or her mental processes concerning the verdict does not apply prior to deliberations. And that rule will be the rule in every case going forward. And I submit that this hypothetical scenario I posited can't be distinguished from this case under that rule. So I have a quick question for you just before and since we're running out of time. I'm still not clear on the answer to my question, which is you said he should have said, that the judge should have said, can you keep this out of your mind? So just very narrow, what is the difference between could you remain fair and impartial? Could you keep an open mind versus what you wanted him to say, which is keep this out of your mind? What is the difference? There's a big difference because a couple of reasons. One, as I said, impartial doesn't simply mean considering both sides. It means basing the decision only on the evidence presented to you in the trial. That's not conveyed to the jurors in the ordinary meaning of the word impartial. Second, asking the jury, were you able to remain impartial, puts the juror on the spot because jurors have a duty. They swear an oath to be impartial. And you're asking the juror, did you comply with that oath? But he also said in the transcripts, did you keep an open mind? And you said you wanted him to keep it out of their mind. So what is the difference between these two? I think the difference is because an open mind is the same thing as impartial. I have an open mind if I consider all the evidence, including that photo incident. That's an open mind. But what the rule requires is that the jurors, if you look at Vervin v. Dowd, the court says a juror has to lay that aside. And this is what courts do all the time in voir dire when they're picking a jury. A juror comes in and says, this is a drug case. My son was jailed for drugs. And the judge will say, well, of course, all jurors come here with experiences and memories and so on. But can you put that out of your mind and decide this case only on the basis of the evidence before you? But I'm not sure that example helps, because in that situation, we're not suggesting that the person literally forgets that their son was injured in a drug deal. They can't do that. That's not how the human brain works. And that's the problem here, that the district court and the government both reduced that inquiry to the question whether or not the jury could remember it. And we never said that the juror couldn't be impartial if they remembered it. The point is that jurors have to be able to lay it aside, put it out of their minds, decide the case based only on the evidence. I see my time is up. All right. Thank you very much, Mr. Anzano. We appreciate it. Thank you, Your Honors.
judges: J. Harvie Wilkinson III, Toby J. Heytens, Roderick Charles Young